# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Gayle M. Cole, | |
|                  Plaintiff, | |
| v. | |
| Indiana Department of Workforce Development, | Civil Action No. 1:13-CV-347-JVB |
|                  Defendant. | |

## OPINION AND ORDER

In this Title VII lawsuit, Plaintiff pro se Gayle Cole alleges that Defendant, Indiana Department of Workforce Development, racially discriminated against her, which eventually led to her discharge. Plaintiff also contends that Defendant retaliated against her for complaining about race discrimination and subjected her to a hostile work environment. Plaintiff, an African-American woman, worked as an unemployment insurance claims deputy for Defendant from 2009 until September 2012. Defendant, in its Motion for Summary Judgment, counters Plaintiff's version of events and maintains that it fired her because she consistently failed to meet established productivity benchmarks. Defendant asserts that this failure was the sole factor in its decision.

**A. Background**

Plaintiff worked for Defendant in different part and full-time capacities from 2000 until 2009, when she accepted a job offer from Defendant as a Claims Deputy 5 in its Fort Wayne facility. (DE 43-1, Mem. at 1.) Defendant describes this position as requiring an individual to "analyze[] information and make[] eligibility determinations in conformance with state and federal unemployment laws . . . [and that] [t]hese determinations must meet stringent timeliness

and quality standards . . . set by federal and state authorities." (DE 43-2, Ex. B at 1.) After a week in this new position, Defendant discharged Plaintiff. (DE 43-5, Ex. E at 1.) Neither party describes what led to this discharge. Nevertheless, this oversight is inconsequential because Defendant reinstated Plaintiff six weeks later, paid her back pay, and she signed a release that prevents her from litigating this discharge. (*Id.* at 1–3.)

Plaintiff continued to struggle after her reinstatement. Defendant required claims deputies to address 20 issues per day, but Plaintiff routinely failed to meet this productivity standard. For instance, for the 37-week period spanning June 2010 through February 2011, Plaintiff never met this standard. (DE 43-6, Ex. F at 1–2.) Because of this failure, Plaintiff's supervisor gave her an overall performance rating of "Needs Improvement" on her 2010 annual evaluation and attributed this to Plaintiff's inability to perform "at an adequate rate which inhibits her ability to meet required production levels." (DE 43-7, Ex. G at 3–4.)

Following this evaluation, Plaintiff failed to improve her production levels and her supervisor eventually placed her on a Work Improvement Plan (WIP) in March 2011. (DE 43-9, Ex. I at 1.) Plaintiff's WIP, which spanned eleven weeks, required her to work with a supervisor and a "Program Specialist 4" to improve her productivity and meet with these two individuals weekly to discuss progress and to "determine what future steps can be taken." (*Id.*) Plaintiff's WIP also required her to maintain a production level of at least 70% during the first two weeks of the program and between 80-100% during the last two weeks. (DE 43-9, Ex. I at 1.) Plaintiff met the minimum 80% production level during six of the eleven weeks of her WIP and her supervisor released her from the program. (DE 43-6, Ex. F at 2.)

Upon release from the WIP in May 2011, Plaintiff's productivity levels again slipped below the 80% minimum standard. In fact, in the year following her WIP Plaintiff only met the minimum standard six weeks. Because of this precipitous and sustained drop in productivity,

2

Plaintiff's supervisor met with her in July 2011. During this meeting, her supervisor relayed that her post-WIP performance was unsatisfactory and a failure to consistently meet minimum productivity standards might result in disciplinary action. (DE 43-11, Ex. K. at 1.) Approximately two weeks later, another supervisor divided Plaintiff's assignments amongst her coworkers because she was falling so far behind. (DE 43-12, Ex. L at 1–2.)

The following month, in August 2011, Plaintiff filed a Civil Service Employee Complaint alleging that Defendant improperly denied her a pay raise because of racial discrimination and retaliation. (DE 43-13, Ex. M at 1–2.) Plaintiff's complaint was dismissed because her annual evaluation, which characterized her overall performance as "Needs Improvement," made her ineligible for a pay raise. (DE 43-14, Ex. N at 1.) The state official reviewing her complaint also noted that the comparators cited by Plaintiff were inappropriate because none of them had received negative evaluations. (*Id.*)

In November 2011, Plaintiff's supervisor reprimanded her for an unsatisfactory number of "negative issues" and for passing only five of her twelve quality assurance reviews. (DE 43-16, Ex. P at 2.) Plaintiff's supervisor also noted that Plaintiff's "production, timeliness, and quality are all at unacceptable levels." (*Id.*) Plaintiff filed a Civil Service Employee Complaint arguing that this reprimand was unjust and singled her out unfairly. (DE 43-18, Ex. R at 1–4.) Defendant's Human Resources Director dismissed Plaintiff's Complaint because she found "[t]he discipline administered was appropriate due to [Plaintiff's] high number of issues that are untimely" and her continued low productivity. (DE 43-19, Ex. S at 1.) Plaintiff's appeal of this decision was also denied. (DE 43-20, Ex. T at 1.)

In January 2012, Plaintiff received her 2011 annual evaluation. (DE 43-23, Ex. W at 1.) Plaintiff's supervisor stated that she was not meeting expectations for teamwork, drive for results, motivation/initiative, and organizational commitment. (*Id.* at 3–4.) Correspondingly,

3

Plaintiff received an overall performance rating of "Does Not Meet Expectations," which is the lowest designation possible. Defendant suspended Plaintiff for five days in February 2012, because she again failed to meet minimum productivity standards in December and January. (DE 43-24, Ex. X at 1.) In response, Plaintiff filed a Civil Service Employee Complaint (DE 43-25, Ex. Y.), which her Human Resources Director denied. (DE 43-26, Ex. Z at 1.)

Defendant eventually discharged Plaintiff on September 28, 2012, because of her continued inability to meet productivity standards. (DE 43-28, Ex. BB at 1.) Plaintiff maintained that her discharge was a continuation of Defendant's ongoing pattern of race discrimination and retaliation and filed another Civil Service Employee Complaint to combat her discharge. (*Id.*) The State Employees' Appeals Commission consolidated Plaintiff's complaints regarding her reprimand, suspension, and discharge. After a four-day hearing, the Administrative Law Judge (ALJ) found that Defendant's "employment decisions were not caused by unlawful race discrimination, harassment, or retaliation." (*Id.* at 2.) Two months after the ALJ's decision, Plaintiff filed this Title VII action alleging Defendant's actions constituted race discrimination, retaliation, and subjected her to a hostile work environment.

B.  **Summary Judgment Standard**

A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) also requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C. Defendant's Motion for Summary Judgment**

Defendant has filed a motion for summary judgment on all three of Plaintiff's claims. Defendant, in accordance with Local Rule 56-1(f) provided Plaintiff, a pro se litigant, with a notice of the consequences of failing to respond to a summary judgment motion. Plaintiff filed a

Response but failed to establish the prima facie elements of any of her claims. Consequently, the Court grants Defendant's Motion for Summary Judgment (DE 41).

**(1)** *Plaintiff's Title VII Racial Discrimination and Retaliation Claims*

Title VII makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff pursuing a Title VII race discrimination claim can survive summary judgment through the direct or indirect method of proof. *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 776 (7th Cir. 2013). In this case, Plaintiff has not presented any direct or circumstantial evidence that supports an inference of discrimination. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). Similarly, for her retaliation claim, Plaintiff provides no direct evidence of a causal connection between her statutorily protected activity and any adverse employment action. Accordingly, the Court presumes Plaintiff is attempting to survive summary judgment on her race discrimination and retaliation claims by employing the indirect method.[1]

Under the indirect method, a plaintiff must demonstrate that: (1) they are members of a protected class; (2) they were meeting their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) at least one similarly situated employee, not in their protected class, was treated more favorably. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). If Plaintiff can establish a prima facie case, then "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for [the adverse employment action] which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Petts v. Rockledge Furniture*, LLC, 534 F.3d 715, 725 (7th Cir. 2008). If

---

[1] Plaintiff raises her discrimination and retaliation claims under Title VII. For both claims, Plaintiff's prima facie burden includes demonstrating that she was meeting her employer's legitimate expectations and similarly situated employees outside her protected class were treated more favorably. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004). As a result, the Court can analyze both claims concurrently.

6

the defendant meets this burden, the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for race discrimination. *Id*. A plaintiff pursuing a claim under the indirect method bears "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the . . . plaintiff." *Contreras v. Suncast Corp.*, 237 F.3d 756, 760 (7th Cir. 2001).

In this case, Plaintiff fails to satisfy two prongs of her prima facie case. First, Plaintiff has not demonstrated that she was meeting her employer's legitimate expectations. As recounted above, Defendant has provided voluminous evidence that demonstrates that Plaintiff was not meeting the minimal level of productivity required and Defendant informed her repeatedly of this failure. Moreover, Defendant tried to provide Plaintiff with resources and additional training necessary to achieve her productivity goals, but to no avail. Second, Plaintiff has not alleged any comparators outside her protected class that Defendant treated more favorably. Plaintiff failed to provide evidence that employees of another race, or employees who did not file a discrimination complaint, were treated more favorably than she was. Instead, Defendant, albeit unnecessarily, provided evidence that it disciplined and discharged white employees with similar performance and productivity issues. Even though the Court liberally construes Plaintiff's pro se response, she has still failed to establish a prima facie case for her Title VII discrimination and retaliation claims. Accordingly, the Court grants Defendant's motion for summary judgment as it addresses these two claims.

**(2)** *Plaintiff's Title VII Hostile Work Environment Claim*

Plaintiff's final claim alleges that Defendant subjected her to a hostile work environment. Plaintiff alleges that her supervisors created this hostile work environment by not selecting her for overtime assignments or special projects and placing her on a Work Improvement Plan

(WIP). Plaintiff maintains that the WIP humiliated her in front of her co-workers because a supervisor came and sat with her three to four times per week to monitor her work.

In a hostile work environment context, an employer violates Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create[s] an abusive working environment." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)). To maintain a hostile work environment claim, a plaintiff must prove "(1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Id*. To satisfy the first prong, the plaintiff must subjectively believe that the harassment was sufficiently severe or pervasive to have altered the working environment, and the harassment must be sufficiently severe or pervasive, from the standpoint of a reasonable person, to create a hostile work environment. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685 (7th Cir. 2010). The factors that a court may consider in deciding whether the environment is hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (citations omitted).

In this case, Plaintiff has failed to provide any evidence that Defendant's conduct was: objectively offensive, due to her race, severe and pervasive, or interfered with her work performance. While Plaintiff maintains that the WIP was subjectively humiliating, she does not provide any evidence to support her contention that it was objectively offensive. The WIP involved a supervisor observing her for one hour per day and a follow-up meeting to discuss her

production. This sort of performance-based improvement program appears to be a reasonable mechanism to assist an underperforming employee.

Nevertheless, even if the Court deemed the WIP as objectively offensive, which it does not, Plaintiff has not demonstrated that Defendant put her on a WIP because of her race. Instead, Defendant has supplied uncontroverted productivity and performance records that show Defendant implemented the WIP after Plaintiff failed to meet productivity goals for an extended period. Moreover, the WIP was not pervasive, because as soon as Plaintiff's productivity improved, she no longer had to work under these conditions. Accordingly, the Court grants Defendant's motion for summary judgment regarding Plaintiff's Title VII hostile work environment claim.

**E. Conclusion**

The parties present two vastly different stories of what occurred, but Plaintiff has failed to provide sufficient evidence to support any of her claims. Accordingly, the Court grants Defendant's motion for summary judgment (DE 41).

SO ORDERED on September 23, 2015.

                                             s/ Joseph S. Van Bokkelen
                                             JOSEPH S. VAN BOKKELEN
                                             UNITED STATES DISTRICT JUDGE